UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS R. NARRIGAN,<br><br>    Plaintiff,<br><br>    v.<br><br>DEBORAH B. GOLDBERG, in her official capacity as TREASURER and RECEIVER GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS,<br><br>    Defendant. | Civil Action No. 24-10107-MGM |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 18)

March 25, 2025

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

This case presents a constitutional challenge to the Disposition of Unclaimed Property Act, Mass. Gen. Law ch. 200A, enacted by the Massachusetts General Court in 1950. Thomas R. Narrigan ("Plaintiff"), on behalf of himself and a proposed class of all others similarly situated, alleges certain provisions of the Act—those controlling the payment of interest when property is returned—constitute a taking of private property for public use without the payment of just compensation. This taking, he says, violates the Fifth Amendment to the United States Constitution as incorporated to the States by the Fourteenth Amendment.

To remedy this claimed constitutional violation, Plaintiff does not seek monetary compensation directly from the Commonwealth. Rather, invoking the doctrine set forth in *Ex parte*

*Young*, 209 U.S. 123 (1908), he requests as follows: (i) a declaration that the Commonwealth's use of unclaimed property constitutes a taking for purposes of the Fifth Amendment; (ii) a declaration that the Commonwealth must pay just compensation when the unclaimed property is returned and setting the appropriate measure of such compensation; and (iii) an injunction requiring the Commonwealth comply with the aforementioned declarations when processing future unclaimed property requests. (Dkt. No. 1 at 12.)

In response, the Treasurer and Receiver General of the Commonwealth ("Treasurer"), Deborah B. Goldberg, moves to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). More specifically, the Treasurer asserts Plaintiff's complaint is barred by the Eleventh Amendment to the federal constitution, Plaintiff's claim is not ripe for adjudication, Plaintiff lacks standing to pursue these claims in federal court as required by Article III of the federal constitution, and Plaintiff fails to state a plausible claim for relief.

For the following reasons, the court concludes Plaintiff lacks standing to seek injunctive or declaratory relief and this suit, as pled, is barred by the Eleventh Amendment. But, even if these jurisdictional impediments did not exist, Plaintiff's complaint fails to state a plausible claim for relief pursuant to Rule 12(b)(6), providing an alternative and independent grounds for dismissal. The complaint is therefore dismissed.

## II. BACKGROUND

### A. Statutory Background

In 1950, the Massachusetts General Court enacted Chapter 200A to "set[] forth a comprehensive scheme governing the disposition of abandoned property." *Matter of Olchowski*, 153 N.E.3d 376, 384 (Mass. 2020) (internal quotation marks omitted; alteration added). The Act's passage came in response to a request from then Massachusetts Governor Paul A. Dever, who explained:

> We need to adopt a law which will cover the disposition of *all kinds* of abandoned and unclaimed property; will protect true owners' rights when and if they appear to

> substantiate their claims; and provide a smooth and simple procedure for transferring such property into the state treasury and out of the hands of those in unjust possession.

*Treasurer & Receiver Gen. v. John Hancock Mut. Life Ins. Co.*, 446 N.E.2d 1376, 1383 (Mass. 1983) (quoting 1950 Mass. Sen. Doc. No. 1, at 22) (alteration in original)). "The legislative purposes of the law are threefold: 'protecting true owners' rights, bringing additional revenues to the treasury, and providing a procedure for the transfer of abandoned property.'" *Matter of Olchowski*, 153 N.E.3d at 384 (quoting *Biogen IDEC MA, Inc. v. Treasurer & Receiver Gen.*, 908 N.E.2d 740, 743 (Mass. 2009)).

> To effectuate this legislative purpose, the Act defines property broadly to include:
>
> all intangible property, including: (i) money, money orders, checks, drafts, deposits, interest, dividends, income and bonds; (ii) credit balances, customer overpayments, security deposits, refunds, credit memos, unpaid wages, unused airline tickets, mineral proceeds and unidentified remittances; (iii) stocks and other intangible ownership interests in business associations; (iv) money deposited to redeem stocks, bonds, coupons and other securities, or to make distributions; (v) amounts due and payable under the terms of an annuity or insurance policy; (vi) amounts distributed from a trust or custodial fund established under a plan to provide any health, pension, vacation, severance, retirement, death, stock purchase, profit sharing, employees savings, supplemental unemployment insurance, or similar benefit; and all tangible property, which includes all other property not defined herein as intangible.

Mass. Gen. Law ch. 200A, § 1. It further defines "abandoned property" as "property presumed unclaimed and abandoned pursuant to this chapter." *Id.* When exactly property is presumed abandoned depends on the nature of the property. *See* Mass. Gen. Law ch. 200A, §§ 1a-6e. In broad terms, the presumption of abandonment attaches when the property has remained untouched for a period of one to three years and the property's owner has not communicated with the party overseeing the property for a similar length of time. *See generally id.*

After the presumption of abandonment attaches, the property's custodian must try to notify the "apparent owner" of its existence. Mass. Gen. Law ch. 200A, § 7a. If this fails, the custodian must file a report with the Treasurer, Mass. Gen. Law ch. 200A, § 7, before ultimately surrendering the property to the Treasurer, Mass. Gen. Law ch. 200A, § 8a. The Treasurer then must satisfy her own obligation to provide notice, in this case by publication in "a newspaper of general circulation." Mass.

Gen. Law ch. 200A, § 8. Property remaining unclaimed after each of these steps "vest[s] in the commonwealth." Mass. Gen. Law ch. 200A, § 9(a) (alteration added).

However, "[a]ny person claiming an interest in property surrendered to the state treasurer under the provisions of this chapter may establish his claim at any time thereafter." Mass. Gen. Law ch. 200A, § 10(a) (alteration added). The General Court delegated to the Treasurer the power to resolve these claims through an administrative hearing process. Mass. Gen. Law ch. 200A, § 10(b). These decisions are, however, subject to judicial review before the "district, municipal or superior court of the county wherein [the claimant] resides." Mass. Gen. Law ch. 200A, § 10(d) (alteration added). And ultimately, the decision may be appealed to the Supreme Judicial Court. *Id.*

A claimant does not typically receive the return of their actual property, but rather a cash equivalent, as property in the possession of the Commonwealth is eventually liquidated. In the case of non-securities property, this occurs after one year; while in the case of securities, this generally does not occur for three years. *See* Mass. Gen. Law ch. 200A, § 9(b). The proceeds of these liquidation sales are deposited in a special fund—the Unclaimed Property Fund. Mass. Gen. Law ch. 200A, § 9(e). Once the Unclaimed Property Fund reaches $500,000, any excess money is deposited into the Commonwealth's General Fund. *See id.* When a claim is successful the funds are paid out from the Unclaimed Property Fund, with the claimant entitled to a certain degree of interest depending on whether the underlying abandoned property was interest bearing or not. Mass. Gen. Law ch. 200A, § 10(e). Claims originating from non-interest-bearing property receive a rate of 1% per year for a maximum of fourteen years. *Id.* In contrast, claims originating from interest-bearing property receive the same rate of interest as the underlying property, but only to a maximum rate of 5% for a maximum of fourteen years. *Id.* The fourteen-year period begins to run on the date the property is delivered to the Treasurer. *Id.*

4

**B. Factual Background**

The Commonwealth holds less then $100 of unclaimed property in Plaintiff's name. This property is described as "miscellaneous intangible property" and "refunds." Plaintiff's funds are among the more than $3,000,000,000 in unclaimed property allegedly held by the Commonwealth. The Commonwealth has paid out nearly $787,000,000 from the fund in the last five years, but Plaintiff has not sought to claim any of his property.

### III.   LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), which governs jurisdictional challenges "grounded in considerations of [standing], ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction," the court may apply one of two approaches depending on the nature of the jurisdictional challenge. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001) (alteration added). Here, as the Treasurer has raised only a facial challenge to this court's jurisdiction, the court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009) (alteration added). "If the well-pleaded facts, evaluated in that generous manner, do not support a finding of federal subject-matter jurisdiction, the orders of dismissal must [issue]." *Id.* (alteration added).

As Defendant also raises a Fed. R. Civ. P. 12(b)(6) challenge, the court applies the standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to this branch of the motion. Therefore, the complaint must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must credit well-pleaded factual allegations as true and draw all

5

reasonable inferences from those facts in the non-moving party's favor. *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). "Well-pleaded facts must be non-conclusory and non-speculative." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018) (internal quotation omitted). For a claim to proceed, the complaint must allege enough facts to plausibly establish each material element of the claim and "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Pitta v. Medeiros*, 90 F.4th 11, 17 (1st Cir. 2024). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (citing *Twombly*, 550 U.S. at 555)

### IV. DISCUSSION

Because "courts must adjudicate plausible challenges to their jurisdiction prior to adjudicating the merits of a case," the court's analysis begins with standing, before turning to the Eleventh Amendment, as these jurisdictional issues "preclude[] [the court] from exercising judicial power over [the Treasurer]." *Brait Builders Corp. v. Massachusetts, Div. of Cap. Asset Mgmt.*, 644 F.3d 5, 10 (1st Cir. 2011) (alteration added). Then, in the interest of judicial efficiency, the court addresses the substance of Plaintiff's constitutional claim.

#### A. Standing

This court's "judicial power is limited by Article III of the Constitution to actual cases and controversies." *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014). "Standing is built on a single basic idea—the idea of separation of powers." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (internal quotation marks omitted). "The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" *Id.* at 379 (quoting *Valley Forge Christian Coll. v.*

6

*Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 (1982)). "Standing also tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Id.* (internal quotation marks omitted). Ultimately, "[o]ur system of government leaves many crucial decisions to the political processes, where democratic debate can occur and a wide variety of interests and views can be weighed." *Id.* at 380 (alteration added; internal quotation marks omitted).

To satisfy this constitutional requirement, "a plaintiff must sufficiently plead three elements: injury in fact, traceability, and redressability." *Kerin*, 770 F.3d at 981 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). "[A] plaintiff must 'demonstrate standing separately for each form of relief sought.'" *Nat'l Ass'n of Gov't Emps., Inc. v. Yellen*, 120 F.4th 904, 910 (1st Cir. 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021)). "Past harm is insufficient to confer standing to seek forward-looking declaratory or injunctive relief; there must be ongoing injury or a sufficient threat that the injury will recur." *Id.* (internal quotation marks omitted). This risk of future harm must be "certainly impending." *Id.* "A threatened harm that is too attenuated or too speculative does not provide standing to seek an injunction." *Roe v. Healey*, 78 F.4th 11, 20 (1st Cir. 2023) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).

Here, Plaintiff's factual allegations, as supplemented by his legal arguments on the question of standing, do not satisfy the court that Article III's requirements are met.[1] Plaintiff alleges his constitutional harm accrued when "the Treasurer took his property into custody and, as required by the Act, put the property to public use without paying just compensation." (Dkt. No. 32 at 20.) This harm would support standing for retrospective monetary relief. Plaintiff does not, however, bolster

---

[1] The court has not certified a class; thus, only Plaintiff's individual allegations are relevant to the standing analysis. *See Kerin*, 770 F.3d at 981.

7

this allegation of past harm by indicating he intends to abandon property in the future, intends to claim his property from the government, or is otherwise likely to suffer a similar taking in the future. These allegations are not sufficient to confer standing on a party seeking prospective relief. *See, e.g., Raymond v. Conine,* No. 2:23-CV-01195-CDS-MDC, 2024 WL 3498182, at *6-7 (D. Nev. July 22, 2024) (dismissing proposed class action challenging Nevada's unclaimed property scheme for lack of standing).

In response, Plaintiff contends his harm is ongoing because his property remains in the Commonwealth's accounts. But "[a]lthough those earlier actions may have present effect, that does not mean that they are ongoing." *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (alteration added). "Plaintiff[] here ha[s] only alleged that [he] w[as] injured by past takings . . . a prior taking is a past harm insufficient to confer standing for prospective relief, even when it is alleged that the government has unlawfully retained assets that rightfully belong to the plaintiff." *James v. Hegar*, 86 F.4th 1076, 1082 (5th Cir. 2023) (alterations added), *cert. denied*, 144 S. Ct. 1461 (2024).[2] Plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending," *Clapper*, 568 U.S. at 416 (alterations added); *see also Valley Forge Christian Coll.*, 454 U.S. at 487; *Light v. Davis,* No. 23-2785, 2024 WL 4144066, at *2 (3d Cir. Sept. 11, 2024) (rejecting notion a Takings claim may be premised on a "hypothetical harm"). This analysis applies with equal force to Plaintiff's request for declaratory relief, as "a controversy has not yet arisen, [and] declaratory judgment is inappropriate." *Ka Lok Lau v. Holder*, 880 F. Supp. 2d 276, 281 (D. Mass. 2012) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)); *see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937) (explaining the existence of "real and substantial controversy

---

[2] When the Treasurer argues this court cannot enjoin a future taking, Plaintiff asserts his harm occurred in the past when his property entered state custody. But in addressing this past taking being remediable through monetary damages, Plaintiff then argues the harm will manifest in the future when he tries to reclaim his property and is denied the proper rate of interest.

admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts" separates a permissible declaratory judgment from an impermissible advisory opinion); *Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops,* 705 F.3d 44, 53-54 (1st Cir. 2013). Accordingly, Plaintiff lacks standing to seek prospective relief against the Treasurer.

### B.     The Eleventh Amendment

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI; *see also Alden v. Maine,* 527 U.S. 706, 727-28 (1999) (explaining that, despite the plain text of the amendment, it applies with equal force to a citizen trying to sue her own state in federal court). "The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies and that this 'jurisdictional bar applies regardless of the nature of the relief sought.'" *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000) (quoting *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984)). "Therefore, '[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought.'" *Brait Builders Corp. v. Massachusetts, Div. of Cap. Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011) (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985)).

####     1.   *Abrogation and Waiver*

The Commonwealth has not waived its Eleventh Amendment immunity, nor has Plaintiff identified a valid abrogation of that immunity. Plaintiff cites 42 U.S.C. § 1983 as the basis for this suit, but a State is not a person for purposes of Section 1983 liability, and Section 1983 did not abrogate the States' Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-67 (1989); *Quern v. Jordan,* 440 U.S. 332, 342-45 (1979). To the extent Plaintiff asserts a free-standing cause

of action arising out of the Fifth Amendment and purportedly abrogating sovereign immunity, this cause of action has not yet been recognized when the courts of the Commonwealth are open to Takings Clause claims. *See DeVillier v. Texas,* 601 U.S. 285, 291-93 (2024). Plaintiff's reliance on selective quotations from *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019), for the proposition that the case may have altered Eleventh Amendment analysis in the Takings Clause context is misplaced. *Knick* involved a municipal defendant, not a state. Accordingly, "[e]very circuit to consider the question has held that *Knick* did not change states' sovereign immunity from takings claims for damages in federal court, so long as state courts remain open to those claims." *Pavlock v. Holcomb*, 35 F.4th 581, 589 (7th Cir. 2022) (collecting cases from the 4th, 5th, 6th, and 10th Circuits holding the same), *cert. denied*, 143 S. Ct. 374 (2022); *see also 74 Pinehurst LLC v. New York,* 59 F.4th 557, 570 n. 7 (2d Cir. 2023) (collecting cases holding the same), *cert. denied*, 218 L. Ed. 2d 66 (Feb. 20, 2024).

    *2. Ex parte Young*

In addition to waiver and abrogation, a third limited exception to Eleventh Amendment immunity exists. Under the doctrine established in *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a state official in her official capacity to "compel them to comply with federal law," but "[s]uch suits . . . may only seek prospective injunctive or declaratory relief; they may not seek retroactive monetary damages or equitable restitution." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 478 (1st Cir. 2009). In applying *Ex parte Young,* the court is mindful that "[t]he real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading," thereby requiring an inquiry that looks beyond the labels and characterizations urged by the parties. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997).

    Plaintiff's complaint does not adequately invoke *Ex parte Young*. As a threshold matter, injunctive relief is only appropriate when the moving party demonstrates the "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Esso Standard Oil Co. v.*

*Lopez-Freytes*, 522 F.3d 136, 148 (1st Cir. 2008) (quoting *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)).[3] This traditional equitable principle is not abrogated when *Ex parte Young* is invoked. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021); *see also Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603 (1975). Here, the text of the Takings Clause uniquely contemplates an adequate remedy at law in the form of "just compensation"—a term synonymous with monetary damages. U.S. Const. amend. V.[4] Therefore, "ordinarily, injunctive relief is not available under the Takings Clause," *Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 152 n. 3 (1st Cir. 2012), because "[a]s long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed," *Knick*, 588 U.S. at 205; *see also id.* at 185 ("That does not mean that the government must provide compensation in advance of a taking or risk having its action invalidated . . . governments need not fear that courts will enjoin their activities."). "Massachusetts law provides a means for a property owner to obtain just compensation in state court for property that is taken by the state."

---

[3] As the Supreme Court has repeatedly held, "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis-or prediction-of the merits of the federal claim." Wright & Miller, 17A Fed. Prac. & Proc. Juris. § 4232 (3d ed.) (collecting cases). However, this is separate and distinct from "meet[ing] the usual equitable requirements for an injunction." *Id.* (alteration added); *cf. Cotto v. Campbell*, 126 F.4th 761, 768-69 (1st Cir. 2025) (parsing the boundary between what constitutes impermissible merits analysis and permissible equitable considerations). These requirements, including irreparable injury, remain in place for those seeking to invoke *Ex parte Young*, as "no injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury." *Huffman*, 420 U.S. at 603 (quoting *Massachusetts State Grange v. Benton*, 272 U.S. 525, 527 (1926) (Holmes, J.)); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381-82 (1992) (explaining resort to *Young* is only appropriate when the plaintiff is threatened with irreparable injury); *cf. Montanez-Allman v. Garcia-Padilla,* 782 F.3d 42, 46 (1st Cir. 2015) (citing *Mass. State Grange* with approval). An injury under the Takings Clause is, however, inherently reparable through just compensation.

[4] "As its name suggests, then, just compensation is, like ordinary money damages, a compensatory remedy." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 710 (1999); *see also* "Compensation," Black's Law Dictionary (12th ed., 2024) (categorizing "just compensation" as a sub-category of the broader term "compensation," and noting compensation contemplates a monetary remedy).

*Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 390-91 (D. Mass. 2020) (citing Mass. Gen. Law ch. 79, § 10, declining to enjoin a taking).[5] The court cannot enjoin the Treasurer to halt an ongoing taking or prevent a future taking in these circumstances as a matter of law.

When, as is the case here, state law provides both an adequate forum to raise Takings Clause claims and requires the payment of some amount of interest, Plaintiff is really seeking a "reparative injunction" requiring the Commonwealth use an interest rate of his choosing when it returns his property. But "[s]uch an injunction cannot be fairly characterized as prospective," *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023), because while "[t]here may be a continuing liability for a past harm . . . there is no ongoing [constitutional] violation here" necessitating prospective relief, *Cotto v. Campbell*, 126 F.4th 761, 769 (1st Cir. 2025) (alteration added). Rather, this particular reparative injunction is an attempt to secure "relief [that] is tantamount to an award of damages for a past violation of federal law, even though styled as something else." *Papasan v. Allain*, 478 U.S. 265, 278 (1986) (alteration added); *see also Cotto*, 126 F.4th at 769-70. This is not the sort of ancillary impact on the treasury contemplated in *Edelman*, as the *Edelman* Court foresaw the occasional necessity of expending state funds to effectuate an otherwise prospective injunction, not a mechanism for raiding state treasuries while seeking recompense for past harms.[6] The only injunction theoretically available in this case is

---

[5] Other courts to address the issue have similarly concluded the Takings Clause does not provide for injunctive relief when claims for monetary relief may be pursued in state court. *See, e.g., EEE Mins., LLC v. State of N. Dakota,* 81 F.4th 809, 816 (8th Cir. 2023), *cert. denied sub nom. EEE Mins., LLC v. North Dakota,* 144 S. Ct. 1097 (2024); *Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 334-35 (6th Cir. 2022); *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008).

[6] *Edelman v. Jordan*, 415 U.S. 651, 668 (1974); *see also Green v. Mansour,* 474 U.S. 64, 68 (1985) (explaining "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment"); *Milliken v. Bradley*, 433 U.S. 267, 288-91 (1977) (illustrating when it is appropriate to require expenditure of state funds); *Cotto*, 126 F.4th at 770 (explaining *Young* cannot apply when the relief "amount[s] to accrued monetary liabilit[ies]" (first alteration added; second alteration in original; internal quotation marks omitted)); *Whalen v. Massachusetts Trial Ct.*, 397 F.3d 19, 29-30 (1st Cir. 2005) (holding an injunction seeking restoration of retirement credit and pension benefits did not fit the *Ex parte Young* exception).

therefore beyond the scope of *Ex parte Young*.

The court's conclusion regarding the availability of injunctive relief might be different if Massachusetts refused to pay any amount of interest when returning unclaimed property. *See, e.g., Ambriz v. Hegar,* No. A-22-CV-1067-DII, 2023 WL 4850909, at *1, 3 (W.D. Tex. June 20, 2023*), report and recommendation adopted,* No. 1:22-CV-01067-DII, 2023 WL 4853403 (W.D. Tex. July 28, 2023). This scenario could implicate a prospective or ongoing constitutional violation capable of redress through resort to *Ex parte Young*. In this case, however, Plaintiff "seeks specific damages or a declaration that he or class members are owed specific damages under the statute" and this type of "claim does not fall under the *Young* exception." *Id.* at *3.[7] Rather than "vindicat[ing] the Supremacy Clause," an order of this nature would commandeer the Commonwealth's treasury in a manner inconsistent with the Commonwealth's status as an equal sovereign and reward artful pleading to evade the reach of the Eleventh Amendment. *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 263 (2011) (Kennedy, J., concurring) (alteration added); *see also Coeur d'Alene Tribe of Idaho*, 521 U.S. at 270-71, 281-88; *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 114 n. 25 (1985).[8]

Moreover, even assuming there is an ongoing constitutional violation that the court has the

---

[7] *See Schweitzer,* 523 F.3d at 956 ("A remedy for past injury, even if it purports to be an injunction against state officers requiring the future payment of money, is barred because relief inevitably come[s] from the general revenues of the State . . . , and thus … resembles far more closely [a] monetary award against the State itself, which is forbidden under the Eleventh Amendment." (internal quotation marks omitted; alterations in original)); *Los Molinos Mut. Water Co. v. Ekdahl*, 695 F. Supp. 3d 1174, 1189-90 (E.D. Cal. 2023).

[8] For example, the Supreme Court has repeatedly recognized that "[e]quitable relief [is] not available [against the federal government to enjoin a taking] because monetary relief [is available] under the Tucker Act." *Knick*, 588 U.S. at 195 (alteration added); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 697 n. 18 (1949); *Hurley v. Kincaid*, 285 U.S. 95, 103-05 (1932). To alter this rule when the Commonwealth is the defendant would infringe on principles of federalism. *See Alden*, 527 U.S. at 749 (warning against "plenary federal control of state governmental processes [which] denigrates the separate sovereignty of the States." (alteration added)).

power to enjoin, Plaintiff must also show the official named in the complaint has "some connection" with enforcement of the allegedly unconstitutional provision, such that an injunction would end the alleged constitutional violation. *Cotto*, 126 F.4th at 772-73. It is not apparent that the Treasurer has any authority to "change these [challenged] procedures." *Id.* at 772 (alteration added). Interest rates are not set by an administrative regulation promulgated by the Treasurer, nor does the Act delegate to the Treasurer the power to alter the interest rates. Rather, the rates are set forth in the plain text of the Act, while Mass. Gen. Law ch. 200A, § 10(e) imposes a mandatory duty on the Treasurer to comply with its terms when disbursing funds to successful claimants. In the face of these clear statutory directives, the Treasurer lacks the authority to unilaterally nullify select portions of the Act by authorizing distributions from the treasury in a manner inconsistent with the plain text of the Act, as "the Treasurer has no power to disburse any monies on behalf of the Commonwealth in the absence of an appropriation therefor, and then only where there exists a warrant executed by the Governor." *Bromfield v. Treasurer & Receiver Gen.*, 459 N.E.2d 445, 449 (Mass. 1983).[9] Therefore, "an injunction against the [the Treasurer] could not bring about the relief plaintiff[] seek[s], [meaning] the *Ex parte Young* exception does not apply." *Cotto*, 126 F.4th at 773 (alterations added).

Finally, Plaintiff's ancillary request for declaratory relief is similarly barred as a matter of law. "[S]uch a declaration would be the functional equivalent of an unwarranted injunction against the enforcement of the Act." *Baptiste*, 490 F. Supp.3d at 391. The First Circuit has squarely held a

---

[9] *See K.J. v. Superintendent of Bridgewater State Hosp.*, 173 N.E.3d 363, 368-70 (Mass. 2021) (discussing the doctrine of separation of powers in Massachusetts); *New England Div. of Am. Cancer Soc. v. Comm'r of Admin.*, 769 N.E.2d 1248, 1256 (Mass. 2002) ("It is beyond question that [t]he power to appropriate money of the Commonwealth is a legislative power. Under the Constitution it can be exercised only by the General Court and in the particular manner prescribed." (internal quotation marks omitted and alteration in original)); *In re Opinion of the Justs.*, 35 N.E.2d 5, 16 (Mass. 1941) (describing the limits of the executive branch's power of disbursal); *Cotto*, 126 F.4th at 773 (explaining the executive branch in Massachusetts cannot alter procedures set by the judicial branch); *Hearne v. Board of Educ. of City of Chicago*, 185 F.3d 770, 777(7th Cir. 1999) (noting, in the context of *Ex parte Young*, executive branch lacks generalized power to "nullify" laws).

declaratory judgment may not be used to "end run" around the Eleventh Amendment. *Cotto*, 126 F.4th at 772.

Accordingly, Plaintiff's complaint is barred by the Eleventh Amendment.

### C. The Takings Claim

As an alternate and independent grounds for dismissal, Plaintiff has also not alleged a viable Takings Clause claim. In *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), the Supreme Court explained, "[i]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Id.* at 530 (alteration added). The Supreme Court "has [therefore] never required the State to compensate the owner for the consequences of his own neglect." *Id.* (alteration added). Rather, "[a]s a broad principle of jurisprudence . . . it is clear that a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons." *Standard Oil Co. v. State of New Jersey*, 341 U.S. 428, 435-36 (1951) (alteration added); *accord Delaware v. New York,* 507 U.S. 490, 497 (1993) (reiterating that "States as sovereigns may take custody of or assume title to abandoned personal property as *bona vacantia*"); *Roth v. Delano*, 338 U.S. 226, 230-31 (1949) (noting funds held by a national bank undergoing liquidation may pass by abandonment to the state); *Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 241 (1944) (allowing abandoned bank accounts to escheat to Kentucky). More recently, in *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631 (2023), the Supreme Court reiterated the continued viability of *Texaco* and its predecessor cases, explaining there is a "long tradition" of States taking possession of abandoned property without violating the Takings Clause. *Id.* at 646.[10]

---

[10] The *Tyler* Court went on to find abandonment did not apply, as the statute at issue—Minnesota's forfeiture scheme for collection of unpaid property taxes—was "not about abandonment at all." *Tyler*, 598 U.S. at 647. "It g[ave] no weight to the taxpayer's use of the property." *Id.* By contrast, here, abandonment is directly at issue. It is Plaintiff's failure to make any use of the property that triggers statutory abandonment according to the Massachusetts Act, thereby bringing the case under the umbrella of *Texaco*.

Consistent with these "broad principle[s] of jurisprudence," the majority of federal and state courts to consider the question have declined to find a taking when property passes into the hands of the State because of abandonment.[11] The Seventh Circuit, by contrast, has issued several decisions holding otherwise and allowing claims similar to Plaintiff's to proceed. *See generally Goldberg v. Frerichs*, 912 F.3d 1009 (7th Cir. 2019); *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017), *as amended* (Nov. 9, 2017); *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013); *Vargo v. Casey*, --F. Supp.3d--, No. 20-CV-1109-JDP, 2024 WL 4794692 (W.D. Wis. Nov. 14, 2024). But this court finds persuasive those decisions refusing to rely on the Seventh Circuit's precedent, as these cases are more faithful to "*Texaco*'s core holding that a state's control over abandoned property is not a taking that requires compensation under the Fifth Amendment." *Dillow v. Garity*, No. CV 22-1852, 2024 WL 1975458, at *4 (E.D. Pa. May 3, 2024); *see also Maron v. Patronis*, No. 4:22CV255-RH-MAF, 2023 WL 11891258, at *4-5 (N.D. Fla. Sept. 5, 2023); *Ambriz v. Hegar*, No. A-22-CV-1067-DII, 2023 WL 4850909, at *6-7 (W.D. Tex. June 20,

---

[11] *See, e.g., Peters v. Cohen,* No. 24-1040, 2025 WL 733237, at *2 (9th Cir. Mar. 7, 2025) (upholding California's statute); *Cote v. Off. of California State Controller*, No. 23-15375, 2024 WL 1108546, at *1 (9th Cir. Mar. 14, 2024) (reaffirming *Turnacliff v. Westly*, 546 F.3d 1113 (9th Cir. 2008), and *Suever v. Connell*, 579 F.3d 1047 (9th Cir. 2009), upholding California's statute), *cert. denied sub nom. Sykes v. State Controller Off.*, No. 24-162, 2024 WL 4427247 (U.S. Oct. 7, 2024), and *cert. denied sub nom. Cole-Kelly v. Cohen*, No. 24-158, 2024 WL 4427248 (U.S. Oct. 7, 2024), *reh'g denied*, No. 24-158, 2024 WL 4874752 (U.S. Nov. 25, 2024); *Osborne v. PNC Bank*, No. 24-11200, 2024 WL 4448791, at *3 (11th Cir. Oct. 9, 2024) (refusing to find property interest in unclaimed property necessary to support a Takings claim); *Simon v. Weissmann*, 301 F. App'x 107, 112-114 (3d Cir. 2008) (upholding Pennsylvania's statute, collecting cases from California, North Carolina, Louisiana, Texas, and Indiana holding similarly); *Warner v. Hillsborough Cnty. Clerk of Cts.*, No. 822CV01977MSSSPF, 2024 WL 553482, at *4-5 (M.D. Fla. Feb. 12, 2024) *Dillow v. Garity*, No. CV 22-1852, 2024 WL 1975458, at *4 (E.D. Pa. May 3, 2024); *Maron v. Patronis*, No. 4:22CV255-RH-MAF, 2023 WL 11891258, at *4-5 (N.D. Fla. Sept. 5, 2023); *Schramm v. Mayrack*, No. CV 22-1443 (MN), 2023 WL 6387889, at *6-7 (D. Del. Sept. 29, 2023); *Garza v. Woods*, No. CV-22-01310-PHX-JJT, 2023 WL 5608414, at *6-7 (D. Ariz. Aug. 30, 2023) *Ambriz v. Hegar*, No. A-22-CV-1067-DII, 2023 WL 4850909, at *6-7 (W.D. Tex. June 20, 2023), *report and recommendation adopted*, No. 1:22-CV-01067-DII, 2023 WL 4853403 (W.D. Tex. July 28, 2023); *Hall v. State*, 908 N.W.2d 345, 353-56 (Minn. 2018) (finding no taking when non-interest bearing property was returned without interest); *Dani v. Miller*, 374 P.3d 779, 793-94 (Okla. 2016); *Clark v. Strayhorn*, 184 S.W.3d 906, 913-14 (Tex. App. 2006) (upholding Texas statute).

2023), *report and recommendation adopted*, No. 1:22-CV-01067-DII, 2023 WL 4853403 (W.D. Tex. July 28, 2023).

As a matter of law, Plaintiff's property was not taken. It was abandoned through his own neglect. Federal courts have long refused to reward a lack of vigilance in the management of one's property. *See, e.g., United States v. Locke,* 471 U.S. 84, 107 (1985) ("Their property loss was one appellees could have avoided with minimal burden; it was their failure to file on time—not the action of Congress—that caused the property right to be extinguished."); *Hawkins v. Barney's Lessee,* 30 U.S. 457, 466 (1831) ("What right has any one to complain, when a reasonable time has been given him, if he has not been vigilant in asserting his [property] rights?" (alteration added)). Moreover, the Commonwealth provides a mechanism for Plaintiff to reclaim his property in full. It further provides for the recovery of interest earned by the property, even when the abandoned property may not have earned interest beforehand. This is all, and perhaps more, than the federal constitution requires. *See Brown v. Legal Found. of Washington,* 538 U.S. 216, 235-37 (2003) (collecting cases holding "just compensation" requires only that the property owner be returned to the position she was in before the taking); *see also Bos. Chamber of Com. v. City of Bos.,* 217 U.S. 189, 195 (1910) ("And the question is, What has the owner lost? not, What has the taker gained?"). Plaintiff's complaint fails to state a plausible Takings Clause claim.

### V.  CONCLUSION

For these reasons, Defendant's motion to dismiss (Dkt. No. 18) is GRANTED. This case may now be closed.

It is So Ordered.

    /s/ Mark G. Mastroianni  
MARK G. MASTROIANNI  
United States District Judge